## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Darryl Gould, et al.**

    v.                                        Civil No. 16-cv-359-PB
                                                Opinion No. 2017 DNH 161

**First Student Management, LLC, et al.**


## MEMORANDUM AND ORDER

A group of bus drivers and driver assistants has filed a
class action alleging that their employer, First Student
Management, LLC ("First Student"), failed to pay wages due under
the Fair Labor Standards Act ("FLSA") and New Hampshire's wage
and hour laws. First Student has challenged the complaint in a
motion to dismiss for failure to state a claim.


## I.  BACKGROUND

First Student provides busing services to schools in New
Hampshire. For several years, First Student has employed the
plaintiffs as bus drivers and driver assistants. Their
employment agreement entitles them to compensation "for all time
spent in the service of" First Student, including an overtime
premium of one-and-a-half times their regular rate for all hours
worked over forty in a week. Doc. No. 1 at 6, 17, 25-26.

To track and calculate the compensation due, First Student uses a computer program. See id. at 18–22. Upon contracting with a school district, First Student estimates the time required to drive each route. Id. at 18. Estimated route times are then inputted into a computer, which assigns each driver a daily schedule and projects the amount of time the driver will work in a given week. Id. at 19.

The drivers base their complaint on three of First Student's payment practices. First, the drivers claim that they are not compensated for preliminary and "postliminary" activities that they must perform before and after driving. See id. at 19–20. Before commencing a bus route, the drivers must appear at First Student's bus yard at a designated time, wait in line to receive their assignments and keys, proceed to the buses, and log in to an equipment inspection system. Id. These activities take approximately six minutes each day. Id. Although the preliminary activities are an essential feature of the drivers' duties, they are not recorded or compensated. Id. at 19. Similarly, once the drivers complete a bus route, they must return to the bus yard and again log in to the inspection system. Id. at 20. At that moment, their credited working time ends, yet they are still required to conduct postliminary activities, including inspecting and cleaning the buses,

returning equipment, and reporting issues to the First Student office.  Id.  These uncompensated activities take another six minutes each day.  Id.

The drivers next claim that First Student substantially undercompensates its employees by refusing to pay for time spent on trips that exceed preset limits.  Id. at 20–21.  Immediately before and after driving a bus route, a driver must log into a system that tracks the time elapsed while driving.  Id.  If the time elapsed falls within a preset tolerance range, the driver is paid for the estimated time that First Student established for that particular route.  Id. at 21.  If the actual elapsed time exceeds the tolerance range, the system generates an exception report.  Id.  Exception reports are routinely ignored, with drivers receiving compensation only for the preassigned estimate, not the amount of time they actually spent driving. Id.

The third way in which First Student allegedly undercompensates its employees is by miscounting the hours they work on charter routes.  Id. at 22.  To evade its obligation to pay overtime for hours worked above the forty-hour threshold, First Student sometimes improperly shifts time an employee devotes to a charter route from one pay period into a later pay period.  Id.  First Student also separates employees' driving

time into "Charter" and "Regular" categories, and refuses to pay any overtime unless the employee works more than 40 hours in a week within one or both categories. As a result, an employee may fail to receive overtime for a given week even if she works more than forty weekly hours when the time across both categories is combined. Id. at 23. Compounding this problem, First Student does not compensate employees for "dead time" between regular routes and charter routes. Id. at 22.

The drivers assert that First Student uses these payment practices to avoid its duty to pay both overtime and regular hourly wages, known as "straight time."

## II. <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss for failure to state a claim, plaintiffs must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding a motion to dismiss, I employ a two-step approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1,

12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citation, internal quotation marks, and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

### III.  <u>ANALYSIS</u>

The drivers seek damages for straight time and overtime that First Student failed to pay them in violation of both New

Hampshire's wage and hour laws and the FLSA.  I address First Student's challenges to each type of claim in turn.[1]

## A.  **Straight-Time Claims**

### 1.  State Law Straight-Time Claim

New Hampshire law requires employers to pay "all wages due."  N.H. Rev. Stat. Ann. ("RSA") § 275:43, I (2016) (since amended); see Gruda v. Fred H. Hamblet, Inc., No. 11-CV-053-JD, 2011 WL 1792715, at *1 (D.N.H. May 11, 2011) ("Although the statute refers to the timing and means of paying wages, it is used to claim unpaid wages from employers.").  The drivers argue, straightforwardly, that First Student violated the statute by failing to pay them wages they are due for all time worked.  They allege in detail the mechanisms by which First Student underpaid them, including time they spent driving students and performing required ancillary activities for which they were not compensated.  The plaintiffs claim that they bargained for particular rates and hours, and their express employment agreement provides that they "shall be paid for all time spent in the service of" First Student.  See Doc. No. 1-4 at 25.

---

[1] Plaintiffs have sued both First Student and a related entity, First Student, Inc.  Plaintiffs have agreed, however, to abandon their claim against First Student, Inc. (Doc. No. 17). Accordingly, I need not consider plaintiffs' argument that First Student, Inc. can be held liable as a joint employer.

First Student nevertheless argues that the drivers'
straight-time claims fail because the drivers do not
sufficiently allege that they had a contract with First Student
that obligated the company to pay the omitted wages.  This
argument is a nonstarter.  The drivers allege that they
bargained with First Student to receive certain rates "for all
time in [its] service," and they adequately allege that through
a variety of mechanisms First Student failed to pay them wages
due under that arrangement.  Cf. Manning v. Boston Med. Ctr.
Corp., 725 F.3d 34, 57-58 (1st Cir. 2013) (holding contract pled
adequately under Massachusetts law).  That is all that is
required to survive a motion to dismiss.

> 2.  FLSA Straight-Time Claim

The drivers also bring a claim for straight-time wages
under the FLSA, seeking compensation at a regular rate of pay
for hours worked under forty in a week.  The legal theory on
which their claim is based is that the FLSA's overtime provision
provides a cause of action and remedy for uncompensated straight
time during weeks in which they also worked overtime.  Cf. 29
U.S.C. § 207(a).  I agree with First Student that this claim is
not cognizable under the FLSA.

The FLSA's overtime provision requires employers to pay
their employees a premium rate for each overtime hour.  Id.

("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); see Perez v. Mortg. Bankers Ass'n, 135 S. Ct. 1199, 1204 (2015) (construing overtime provision). "Overtime is defined as any employment in excess of 40 hours in a single workweek." Reich v. Newspapers of New England, Inc., 44 F.3d 1060, 1070 (1st Cir. 1995).

The claim asserted by the plaintiffs is not, strictly speaking, for unpaid overtime hours. Instead, they seek to recover a regular rate of pay for uncompensated hours worked under forty. But the plaintiffs limit the scope of their claim to only those weeks during which they also worked overtime. The plaintiffs thus distinguish this "overtime gap time" claim from a "pure gap time" claim seeking unpaid straight-time during weeks in which they did not also work overtime.

I conclude that the plaintiffs' overtime gap time claim is not cognizable under the FLSA. The plain language of the overtime provision provides an employee a cause of action only for "compensation for his employment in excess of [forty] hours." See 29 U.S.C. § 207(a). The plaintiffs do not engage with the plain language of the provision, and courts regularly

and persuasively hold that it does not support an overtime gap
time claim.  See, e.g., Lundy v. Catholic Health Sys. of Long
Island Inc., 711 F.3d 106, 116 (2d Cir. 2013) ("[T]he text of
FLSA requires only payment of minimum wages and overtime wages.
It simply does not consider or afford a recovery for gap-time
hours . . . even if the employee also works overtime hours the
same week.") (citation omitted); Banks v. First Student Mgmt.
LLC, No. CV 16-4316, 2017 WL 616433, at *402 (E.D. La. Feb. 15,
2017) (noting agreement among district courts within Fifth
Circuit); Murphy v. First Student Mgmt. LLC, No. 1:16-CV-01966-
DAP, 2017 WL 346977, at *4 (N.D. Ohio Jan. 24, 2017) (same
within Sixth Circuit); Sargent v. HG Staffing, LLC, 171 F. Supp.
3d 1063, 1078-1079 (D. Nev. 2016) (same within Ninth Circuit);
cf. Davis v. Abington Mem'l Hosp., 765 F.3d 236, 244 (3d Cir.
2014) ("[W]e agree with the clear weight of authority and hold
that pure gap time claims . . . are not cognizable under the
FLSA, which requires payment of minimum wages and overtime wages
only.").

     In concluding that the overtime gap time claim is not
cognizable under the FLSA, I join six other courts that have
rejected this theory in cases brought by the plaintiffs' counsel
against First Student.  See Spencer v. First Student Mgmt. LLC,
No. 15 C 9069, 2016 WL 693252, at *1-2 (N.D. Ill. Feb. 22,

2016); Hensley v. First Student Mgmt. LLC, No. CV 15-3811, 2016 WL 1259968, at *3-4 (D.N.J. Mar. 31, 2016), motion to certify appeal denied, No. CV 15-3811, 2016 WL 7130908 (D.N.J. Dec. 7, 2016) (concluding that "there is not a substantial ground for difference of opinion sufficient to justify interlocutory review"); Rosario v. First Student Mgmt. LLC, No. CV 15-6478, 2016 WL 4367019, at *3-6 (E.D. Pa. Aug. 16, 2016); Terrell v. First Student Mgmt. LLC, No. 4:16-CV-481 SNLJ, 2016 WL 6679847, at *3 (E.D. Mo. Nov. 14, 2016); Murphy, 2017 WL 346977, at *3-4; Banks, 2017 WL 616433, at *404.

Against the plain language of the statute and accumulating adverse case law, the plaintiffs argue that I should follow the Fourth Circuit in recognizing overtime gap time claims under the FLSA. In Monahan, the Fourth Circuit held that the FLSA does not allow claims for pure gap time, but may allow claims for overtime gap time in limited circumstances. See Monahan v. Cty. of Chesterfield, Va., 95 F.3d 1263, 1280-1284 (4th Cir. 1996); see also Koelker v. Mayor & City Council of Cumberland, 599 F. Supp. 2d 624, 635 (D. Md. 2009) (construing Monahan as binding precedent recognizing overtime gap time claims).[2]

---

[2] Monahan may be materially distinguishable from the case before me. The court examined employment agreements of police officers who "are paid a salary pursuant to a partial exemption to the FLSA . . . [and] work a 24-day cycle which has an accompanying [FLSA] overtime threshold of 147 hours," but worked more than

In reaching this conclusion, the Fourth Circuit relied on interpretive bulletins issued by the Department of Labor.  See 29 C.F.R. §§ 778.315; 778.317; 778.322.[3] But unlike regulations, these bulletins do not have the force of law.  See Lundy, 711 F.3d at 116; Reich, 44 F.3d at 1070; compare 29 C.F.R. § 553.2 (describing purpose of part 533) with § 778.1 (describing purpose of part 778).  Accordingly, they are "entitled to respect . . . only to the extent that the agency's interpretation has the 'power to persuade.'"  Flores v. City of San Gabriel, 824 F.3d 890, 898 (9th Cir. 2016) (quoting Christensen v. Harris Cty., 529 U.S. 576, 587 (2000)); see

---

the 135- and 144-hour periods for which they were scheduled.  See 95 F.3d at 1265-66.  Here, however, the plaintiffs do not work a comparable schedule, are not salaried, and do not receive a partial exemption under the FLSA.  Cf. Rosario v. First Student Mgmt. LLC, No. CV 15-6478, 2016 WL 4367019, at *4 (E.D. Pa. Aug. 16, 2016) (noting that Monahan acknowledged viability of overtime gap time claim in "limited circumstances").

[3] For example, 29 C.F.R. § 778.315 states, "In determining the number of hours for which overtime compensation is due, all hours worked (see § 778.223) by an employee for an employer in a particular workweek must be counted.  Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard.  This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid."

Reich, 44 F.3d at 1068, 1070–72 & nn.5, 7, 8; Skidmore v. Swift
& Co., 323 U.S. 134, 138–40 (1944).

The interpretive bulletins do not persuade me that the
plaintiffs' gap time claim is cognizable under the FLSA.  Where
Congress has provided express causes of action and remedies,
courts should exercise caution before implying additional causes
of action and remedies despite the plain language of the
statute.  See Cooley, 2017 WL 1331059, at *5 & n.10; Trejo v.
Ryman Hosp. Properties, Inc., 795 F.3d 442, 450–51 (4th Cir.
2015).  Moreover, it is not clear that the interpretive
bulletins even endorse the plaintiffs' theory.  And even if the
bulletins do, the DOL "provides no statutory support or reasoned
explanation for this interpretation," which is "not grounded in
the statute."  Lundy, 711 F.3d at 117 & n.9; see Murphy, 2017 WL
346977, at *4 (noting that analytical starting point is statute
itself and rejecting DOL bulletins).  Instead, that
interpretation "results in an expansion of the FLSA" beyond what
Congress provided.  Hensley, 2016 WL 1259968, at *4.
Accordingly, I grant the defendants' motion to dismiss the claim
for straight-time pay under the FLSA.  See Doc. No. 1 at 18–23
(Count I).

This conclusion does not leave the plaintiffs without
recourse.  See Banks, 2017 WL 616433, at *404 (noting

availability of state law remedies); Lundy 711 F.3d at 116

(same).[4]  As discussed above, the plaintiffs have successfully

stated a claim for unpaid straight-time wages under state law.

**B.   Overtime Claims**

    1.   FLSA Overtime Claim

    The plaintiffs also bring a traditional claim for overtime

pay under the FLSA.  First Student argues that the plaintiffs

fail to adequately allege an overtime violation.  I agree.

    "A claim for unpaid overtime wages must demonstrate that

the plaintiffs were employed 'for a workweek longer than forty

hours' and that any hours worked in excess of forty per week

were not compensated 'at a rate not less than one and one-half

times the regular rate.'"  Manning v. Boston Med. Ctr. Corp.,

725 F.3d 34, 43 (1st Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).

In a class action, the complaint must sufficiently allege that

each named plaintiff worked more than forty hours in a given

week.  See id. at 44, 46-47.

    The First Circuit addressed the standard for pleading an

overtime violation in Pruell v. Caritas Christi, 678 F.3d 10

(1st Cir. 2012).  The plaintiffs in Pruell alleged that they

---

[4] The FLSA "supplements the hourly employment arrangement with
features that may not be guaranteed by state laws," Lundy, 711
F.3d at 116, but straight-time claims are well-suited for
resolution under state law in state courts.  See Koelker, 599 F.
Supp. 2d at 635 n.11; Monahan, 95 F.3d at 1267.

"regularly worked hours over 40 in a week and were not compensated for such time," but the court concluded that this allegation was "little more than a paraphrase of the statute." Id. at 13. The court explained that such allegations, "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Id. (quoting Penalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (secondary quoted source omitted). Comparing that allegation to those found inadequate in Iqbal and its First Circuit progeny, the court held that the plaintiffs had not adequately alleged an overtime violation. See id. at 13–14. In reaching this conclusion, the court explained that the pleading deficiency was not cured merely because the plaintiffs alleged mechanisms by which the minimum wage or overtime provisions "may have been violated." Id. at 14 (emphasis partially omitted). Thus, it was not sufficient that the plaintiffs alleged that they regularly worked through their lunch breaks but that the computer system tracking their time for compensation automatically deducted a half hour for lunch. See id. at 13–14.

The next year in Manning, a class action involving facts similar to Pruell, the First Circuit returned to the standard for pleading an overtime violation. See Manning, 725 F.3d at

14

39, 46–47 ("We have seen this case before, albeit with different parties."). Because the plaintiffs in Manning adequately alleged that their employer did not pay them for compensable work, the court proceeded to squarely address the separate question of whether "the complaint alleges that each of the individually named plaintiffs worked more than forty hours in a given workweek, as required to bring a[n] FLSA overtime claim." Id. at 46. Engaging in a plaintiff-by-plaintiff analysis, the court noted that each named plaintiff was scheduled for a forty-hour workweek. Id. at 46–47. Because the plaintiffs also identified additional, unscheduled, uncompensated working time that pushed their total weekly hours beyond their scheduled hours and above the forty-hour overtime threshold, the court held that the complaint plausibly alleged an overtime violation. See id. The court thus distinguished its decision from the Second Circuit's decision in Lundy, where the compliant was found inadequate because it did not "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." See Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 113–15 (2d Cir. 2013); Manning, 725 F.3d at 46; cf. Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 86, 88–90 (2d Cir. 2013) (tracing post-Lundy case law elaborating pleading standard).

The complaint before me alleges several mechanisms by which First Student undercompensated its employees. First Student did not compensate preliminary activities, postliminary activities, or dead time between routes. In addition, First Student did not fully compensate driving time because it ignored exception reports for estimated route times, improperly separated hours into regular and charter categories, and misallocated time across pay periods. Thus, the complaint alleges mechanisms by which First Student failed to pay employees for compensable work.

Even so, the named plaintiffs fail to sufficiently plead that they worked more than forty hours. To state an overtime violation, the plaintiffs allege that they "on a regular basis worked in excess of forty hours, when all time is properly counted, and were not paid time and a half for hours worked over forty hours in the given week." Doc. No. 1-4 at 24. This statement is more like the allegations found inadequate in Pruell and Lundy than the allegations found sufficient in Manning.

The plaintiffs' statement closely resembles the key statement rejected in Pruell as "little more than a paraphrase

of the statute." See 678 F.3d at 13.[5] Further, unlike in

Manning, the plaintiffs here do not even attempt to roughly

estimate the hours for which they were scheduled or compensated.

See 725 F.3d at 46; see also Lundy, 711 F.3d at 114-115.

Rather, they perfunctorily assert that some unspecified blend of

compensated and uncompensated time, the amount and relative

proportions of which they do not suggest, totaled over forty "on

a regular basis." Doc. No. 1-4 at 24. Such allegations, "while

not stating ultimate legal conclusions, are nevertheless so

threadbare or speculative that they fail to cross 'the line

between the conclusory and the factual.'" Pruell, 678 F.3d at

13 (quoting Penalbert-Rosa, 631 F.3d at 595 (secondary quoted

source omitted)); see also Rosario, 2016 WL 4367019, at *6

(dismissing overtime claim in virtually identical case as here).

Accordingly, the plaintiffs do not provide sufficient factual

allegations to plausibly infer an overtime violation.

Although the key statements here depart from the allegation

rejected in Pruell in two ways, those differences are

insufficient to state an overtime violation. First, the

plaintiffs state that they worked over forty hours "when all

---

[5] The plaintiffs in Pruell alleged that, "[t]hroughout their
employment with defendants, Plaintiffs regularly worked hours
over 40 in a week and were not compensated for such time,
including the applicable premium pay." Pruell v. Caritas
Christi, 678 F.3d 10, 13 (1st Cir. 2012).

time is properly counted." Doc. No. 1-4 at 24. But this statement merely repackages the mechanisms of undercompensation alleged earlier. See Manning, 725 F.3d at 44-46 (after identifying compensable work that was not compensated, proceeding to evaluate whether plaintiffs adequately alleged working more than forty weekly hours). Because the complaint does not offer even a rough sense of the plaintiffs' schedules or compensated hours, I cannot plausibly infer that the uncompensated activities push the plaintiffs' weekly total over the overtime threshold. In other words, the complaint alleges factual matter to show that an overtime violation is possible, not plausible. See Landers v. Quality Commc'ns, Inc., 771 F.3d 638, 646 (9th Cir. 2014), as amended (Jan. 26, 2015).

Second, the plaintiffs state that they did not receive an overtime premium for the "given" week. Doc. No. 1-4 at 24. But where the plaintiffs fail to plausibly allege that they ever actually worked over forty hours, adding that they were undercompensated in the "given" week does not suffice. See Dejesus, 726 F.3d at 90 (explaining that the "requirement that plaintiffs must allege overtime without compensation in a 'given' workweek [is] not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all

18

workweeks'"); accord Hall v. DIRECTV, LLC, 846 F.3d 757, 776-8 (4th Cir. 2017) (citing Pruell, 678 F.3d at 13).

In holding that the plaintiffs here have failed to allege a plausible overtime violation, I do not require unnecessarily detailed allegations. The pleading standard must be sensitive to context. See, e.g., Landers, 771 F.3d at 645. Thus, plaintiffs need not detail the specific number of hours beyond forty that they worked, the sum of overtime wages due, or the exact dates they worked overtime. See id. at 646; Hall, 846 F.3d at 776-77. Nor must plaintiffs "keep careful records and plead their hours with mathematical precision." Dejesus, 726 F.3d at 90. But to "nudge[] their claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570, the plaintiffs here must put some flesh on their skeletal overtime allegations. This conclusion comports with First Circuit precedent and is strongly reinforced by the standards for overtime pleading adopted by four other circuits. See Hall, 846 F.3d at 776-77; Dejesus, 726 F.3d at 86, 88-90; Davis, 765 F.3d at 241-243 & n.7; Landers, 771 F.3d at 644-46.

Because the plaintiffs have not plausibly alleged a violation of the FLSA's overtime provision, I grant First Student's motion to dismiss that claim with leave to amend. See Doc. No. 1-4 at 23-24 (Count II).

2.  State Law Overtime Claim

The plaintiffs also bring a claim for overtime under New Hampshire law.  Their claim could be construed in three ways, but each warrants dismissal.[6]  First, to the extent that the plaintiffs seek unpaid overtime wages under RSA § 275:43 based on a term in their employment agreement, the pleadings are inadequate for the reasons just articulated.  Second, to the extent that the plaintiffs seek to use § 275:43 to enforce a right created by the FLSA's overtime provision, rather than a term in their employment agreement, their claim is not cognizable.  See Trezvant v. Fid. Employer Servs. Corp., 434 F. Supp. 2d 40, 56 (D. Mass. 2006); Gruda v. Fred H. Hamblet, Inc., No. 11-CV-053-JD, 2011 WL 2412958, at *1–2 (D.N.H. June 14, 2011); see also Román v. Maietta Const., Inc., 147 F.3d 71, 76 (1st Cir. 1998).  Third, to the extent that the plaintiffs rely exclusively on the state overtime provision, their claim falls into an express exception rendering them ineligible.  The state

---

[6] The complaint labels the state overtime claim "breach of contract," but I follow the plaintiffs in construing it as a statutory claim.  See Doc. No. 13 at 17–18.  I also deem waived any argument that claims for overtime wages due under RSA § 275:43 pursuant to an overtime agreement are either (1) unavailable because of the effect of another state statutory provision, or (2) preempted under the FLSA.  First Student did not adequately develop those arguments.  Accordingly, I grant the plaintiffs leave to assert any such claim in an amended complaint.

overtime provision requires employers to pay a premium rate for overtime hours worked by their employees. RSA § 279:21, VIII. But there is an exemption to this statutory requirement for "employers covered under the provisions of the [FLSA]." RSA § 279:21, VIII(b). Because the plaintiffs plead that First Student is an employer engaged in interstate commerce and covered by the FLSA, see Doc. No. 1-4 at 8-9, any claim under the state overtime provision fails. See Trezvant, 434 F. Supp. 2d at 54-56.

Accordingly, I grant First Student's motion to dismiss the plaintiffs' claim for overtime under state law. See Doc. No. 1-4 at 26-27 (Count IV).

## IV. __CONCLUSION__

For the reasons set forth above, I grant First Student's motion to dismiss as to Counts I, II, and IV, but deny its motion as to Count III (Doc. No. 8).

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 29, 2017

cc:  Steven A. Berkowitz, Esq.
     Patrick T. Cronin, Esq.

Shawn J. Sullivan, Esq.
Michael T. Grosso, Esq.
Christopher B. Kaczmarek, Esq.
Melissa L. McDonagh, Esq.